Good morning, Your Honors. Theodore Boutros for the defendants. I'd like to reserve three minutes for rebuttal. The plaintiffs in this case have alleged a sweeping, unprecedented global warming tort claim that encompasses all the oil and gas production activities of the defendants around the world, all the resulting emissions from those activities going back to the Industrial Revolution's commencement. This includes oil production activities on federal land under the direction of federal officers for the benefit of the federal government. And we believe that the case is drenched in federal issues from any angle you look at it. I'd like to start by addressing the argument that plaintiff's claims arise under federal on the two-step analysis that the Supreme Court laid out in the Standard Oil case and other cases that the First Circuit illustrates in the Swiss-American case that we submitted in our December 19, 28-J letter. And the analysis goes like this. When we have a case that's brought in state court that has a state court label, it can be removed if the federal courts determine as a matter of choice of law that federal law is the source of the claim no matter what the label is. Can I interrupt you for a moment because you're assuming that we can look at that issue and we're not limited to Section 1442? Aren't we limited under, aren't we bound by Patel v. Del Taco to look only at Section 1442? No, Your Honor. The Patel case first just didn't look at this issue. It's a really weird case. The case wasn't even removed under Section, wasn't even removed with a petition for removal. An arbitration case was filed, then a civil rights case was filed, and then in the second case the plaintiff argued that the first case should come up along with it. And I looked at the briefs. There's no briefing of this issue. It wasn't a Section 1442 case. It hadn't been, the statute hadn't been amended yet. So under this case, court's cases like Guerrero would say the court has to squarely address, the prior panel must squarely address the issue. Counsel, could I, if I can tell you where I'm coming from on this, I looked at the briefs too, and I think I agree with you. It wasn't really teed up in this way, but what about the holding? Yes, let me just take the holding on the merits. What do you do with that? Absolutely. The holding, well, the court didn't really just, it just didn't discuss the issue, but the rule that plaintiffs are divining from, inferring from the case that only the federal officer removal issue would be available on appeal. We think the Seventh Circuit got it right in the Lujan Hong case, where the court there looked at the Supreme Court's Yamaha decision, interpreting Section 1292B, and said that where the statute in an appellate review context talks about the order is appealable, that means the entire order, not just the issues. And that really flows from the Yamaha decision from the Supreme Court. And I think there's much to be said for Judge Easterbrook's opinion, but we have Patel, and we're a three-judge panel, and I'm trying to figure out whether you're really arguing that we're not bound by Patel. I think you're saying that the holding, I give you, I think you've made a point about the briefing, but there's this holding. And Patel, if I read it differently, don't you agree that we're bound? Your Honor, I don't think that because there's no analysis, and we cited the Guerrero case, which cites other cases, that the court, there was no briefing on this issue, wasn't really disputed as to whether or not the other issue came up. There wasn't even a removal petition. We're bound by many badly reasoned cases. That's nothing new. That's true. But this is focusing on 1443, but I didn't see, in light of the language and structure of this holding, I didn't see why it wouldn't also apply to 1442. And it was in line with all of the other circuits, I think, perhaps with the exception of the Seventh. All of the other circuits that have ruled said, we only look at the 1443 issue. We have no jurisdiction with respect to the others. So it's very hard as interpreting this the same way as the Liu Junhong case. Your Honor, at the time, and again, Judge Easterbrook made this point, the courts hadn't really analyzed the issue. But when you look at the panel decision in Patel, where the court did not discuss the issues, the issues weren't briefed to the court, the court didn't grapple, didn't reason about the issues. Do you have a case that says if precedent is badly reasoned, we're not bound by it? I don't, Your Honor. I haven't found that case. I've been looking for that one for a while. We're not created. But what if you haven't sold us on this notion that Patel doesn't say what, at least, I think it says? I'm just speaking for myself. Because you seem to be in a position in your briefing to say, well, they didn't reach it, but oh, in a footnote, how about you take that on board? Then I think it would be an issue that should go en banc, because there really hasn't been a decision that squarely analyzed these issues. And I think when you look at the plain language of Yamaha and Wright and Miller, which the Yamaha court... It's not on point, right? That's a different case. It's a textual analysis of a different statute. That's true. And certainly, the argument in the better reason cases, or more explicit cases, say prevent the federal courts from looking at all of these issues. It should just be remanded to the state court. And so there's certainly an argument from context and congressional intent that Patel was not wrongly decided. It may not have been thoroughly discussed, in other words, but there are other circuit cases out there that go into this in greater depth, as you know. And there's a split, right? There is a split, Your Honor. I think the decision from, I guess, the Jacks case from the Eighth Circuit doesn't really, as, again, Judge Easterbrook said, really doesn't analyze the issue. I think that Liu Zhonghong, Max, Wright and Miller, which I was about to say was, does analyze the issue, I think, correctly. So I think an en banc review of that issue would be appropriate. I also think... They typically take things en banc if it's not going to change the outcome. I have another... A couple of other routes for the court to take that would fall short of en banc review. One, this same... The federal jurisdiction issues are presented in the next appeal. So the court... And they're presented to the court from Judge Alsop's decision, the appeal by the plaintiff. So the court could look at them in that case and then just remand this case back for further  They're also, Your Honors, our federal officer removal grounds are extraordinarily strong. And this is a case where I vow to you, we thought about winnowing out the issues, but because of the all... For removal, the grounds removal, the all-encompassing nature of these claims. It sweeps in all of the oil and production activities that these companies did under the direction of federal officers. The Elk Hill Naval Reserve. The Navy owned the property. Chevron's predecessor, Standard Oil, had a contract with them where they were under the control of the Navy and over the years produced, I think, something like $17 billion worth of oil for the United States government under the direction of federal officers. But where does it say under the direction of? It's a lease, right? There was a lease. It's a lease that gave the Navy exclusive control to control what was happening in terms of the rate of production. Was it different than other leases? Oil and gas leases that the government issues? I mean, the excerpt that I read sounded like a pretty run-of-the-mill unitization agreement. I didn't see the monitoring or supervision, the sort of close produce agent orange for our warfare type of issues. So point me to the language that would show how this is different than an ordinary oil and gas lease. Well, Your Honor, if we look at page 201, section 4A, the Navy shall have exclusive control over the exploration, prospecting, development, and operation of the reserve and full and absolute power to determine the quantity and rate of production from the reserve. Standard was obligated to maintain the operations such that it would produce not less than 15,000 barrels of oil per day. That's section 4B. I thought this was just until they received their share of production. That's correct, Your Honor, except that to do that, that meant they had to drill and be able to maintain that rate of production. And in part, the reason that that provision existed was so that the facilities would be ready to launch into the action if the United States government needed more oil because of the war or for other reasons. And then subsequent to that, in 1976, this is in our removal petition on pages starting on page 164 of the excerpts of record, when there was an oil shortage, Congress passed a statute that required production to occur. And then for the next 20 years, Chevron and Standard were doing the work for the government, assisting the government to take the oil out of the ground for the government as agents of the government, working at the direction and under the government's auspices. And Judge Chapria didn't take issue with that. He said that because the claims of the plaintiffs were broader, that that meant there wasn't federal officer removal. But that can't be the right analysis. The fact that there are other actions that are swept in, the statute is to be liberally construed. We also have the, as the Supreme Court said in Watson, we also have the Outer Continental Shelf Lands Act, where the federal government said the Outer Continental Shelf is federal land. And the statute was meant to promote the extraction of minerals. In our removal petition, I think it's on page 166 and 167 notes, the Interior Department was really tasked with the obligation to exploit those minerals on the Outer Continental Shelf. And was that different than a regular oil and gas lease between the government and the winner of a lease? It imposes significant obligations, including a right of first refusal. Is it different, though? Is this your standard lease form, or is it something different? I think it's different, Your Honor. And I don't know if it would make a difference if it's the same as a lease. It's a government contract where there are obligations imposed by the lease and by the government's supervision. We've laid out sort of all the, again, in the removal petition in particular, the obligations imposed by the leases, where there was extensive federal supervision, specifications. The United States can, the President can declare that the United States needs the oil and take it. There were strict requirements about what size producers should be able to purchase it. So if this were just about that, there's federal office removal. There's also the OCSLA, the statute itself has a broad jurisdictional grant. So this is a federal case. On the issue of federal officer removal, as you pointed out, plaintiffs are claiming harms from fossil fuels used since the Industrial Revolution. I assume the contract there, even though the number may be large, in terms of fossil fuel since the Industrial Revolution, it's probably a very, very small amount. I mean, is that, if the federal government ever enters into a contract for a limited duration for a small amount, does that entitle federal jurisdiction, even though in the grand scheme of things it's very, very tiny and for a short, limited period of time? It could, Your Honor, and here it is. It's a significant amount. In certain years, the Outer Continental Shelf production has, which was at the direction of federal officers too, so there's a double reason for jurisdiction. It's like a third of the domestic oil production from the United States. So it's a big piece, and the plaintiffs have said that it's all the oil production and that that's a but-for cause, even though that's a pretty small proportion in the scheme of things of the oil production and resulting emissions. So under their own theory, it's part of the, if we need but-for cause, I don't think we do. The OXLA language just says that the controversy must arise out of or in connection with an operation conducted on the Outer Continental Shelf. Clearly we meet that standard. They're saying that oil production on the Outer Continental Shelf, on Elk Hill where there was a contract with the government, that goes to officer removal, that that produced oil that was burned that created these emissions. So clearly it meets that test. On federal officer removal, just the text of the statute, which was broadened in 2013, it's for or relating to any act under color of such office. So clearly the claims here relate to the production on the Outer Continental Shelf. So I think when we look at it, we don't need a lot of federal jurisdiction. We just need some, and because of the nature of the claim, they've swept all this activity in, and that provides a basis for federal jurisdiction. Going back to where I started, assuming the court were to look at the arising under question, this is a federal case because of the interstate nature of the case, and where Judge Chabria jumped to the merits and seemed to agree with Judge Alsup that, yes, this would be a federal case because it's national and global, but because there was displacement, federal common law disappeared. That is just incorrect. If we go back and look at the AEP decision and this court's decision in Kivalina, the court started with the premise that where we're talking about ambient air and water, there is a federal common law. So the question for arising under jurisdiction is what source of law do we look to, no matter what the labels of the plaintiff's claims are, and there can only be one source because the claims involve interstate, international flowing of air and emissions and production activity. And the Supreme Court has said over and over again, and this court said in Kivalina, that those sorts of interstate claims, state law can't apply. But their specific claim is that the sea level is rising and causing them damage within their jurisdiction. That's correct. They're claiming that they suffered harm in California, but based on this global activity, and that's the kind of interstate and international activity. Texas Industries from the Supreme Court said that's the kind of case that involves conflicting state obligations. So other states would also be able to regulate the same global behavior. That just can't be, and it's the kind of case where state law cannot apply. Therefore, the only possible place for them to look is federal common law. And then the step two, and what I think of the standard two-step analysis, is that's later, that's the merits. Judge Alsop then went on to step two when we got to the motion to dismiss. Judge Chabria jumped there, found that federal common law disappeared. That's incorrect, and so we respectfully request that the court rule. There's federal jurisdiction in this case, and I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Good morning. Please, the court. I'm Victor Scher along with public counsel. I represent the three counties and three cities that are the appellees in this matter. I want to focus mostly on the federal officer issue, but I have to take a moment at the start to push back on this mischaracterization of what this case is about. The case does not go back to the dawn of time. It does not attack oil and gas production anywhere at any moment in any amount. It is based on a 50-year campaign of deception and denial. So it's limited temporarily, and legally it's based on the wrongful promotion and marketing and deceit that led to the profligate and uncontrolled  And you cannot read the complaint fairly starting with the very first paragraph and reach any other conclusion on this point. A very brief comment about the scope of review. As Judge Ikuda pointed out, the Yamaha case analyzed a different statute, 1292B, with very different policy concerns. Congress in 1447D said, no issue is reviewable as long as it arises under 1447C, except for the civil rights provision and the federal officer provision. So whereas 1292B deals with the timing of otherwise appealable issues at the end of the case and allows them, if both the district court and the court of appeals grant exercise discretion, to hear them sooner, the defendant's reading of 1447D would say, by adding a meritless federal officer removal claim, they then have the right to review every other ground for appeal under the removal rule. There is a circuit split, and I've been pretty upfront about my view of Patel, but I am intrigued, and I'd like to hear your perspective on this. I think that opposing counsel is correct that there wasn't much briefing on the issue at all, that it was teed up the way it was, and yet I read the holding to be pretty unambiguous. Did you happen to look at that issue and consider whether we have comparable case law where we've said that there's reason to look behind a holding where an issue was not squarely presented? I haven't found any case that would allow the panel to look behind the prior clear holding, and the holding is clear, and it's been applied, albeit in unpublished opinions, uniformly in this court ever since. You anticipated my next question. I can only find unpublished opinions in the wake of it. Well, the one other opinion that I found that mentioned it... But we've been consistent, I think, and there are other... I don't want to spend a whole lot of time on this. There is a circuit split, I think, as opposing counsel acknowledged, and there are other circuits with more fulsome discussions of the rule. Correct. Yeah, and maybe I should just move on to federal law. Well, I didn't mean to waylay you. I just wanted to check in to see if you had any authority on that particular point because it's sort of bothering me, but that's fine. Thank you. The case is over if you look at the causal connection issue between the conduct complained of by the defendants and even granting the evidence that they've posited with the Elk Hills Reserve lease and the OCS leases and the NEXCOM contracts. I will talk about in a moment why none of those rise to the standard that the Supreme Court or this court has held for the requisite direction and control by a federal officer. But their case, sorry, for removal founders on the evidence, the lack of evidence between the claims in the case and any federal officer in direction. And this is why the framing of the complaint is so important. The complaint rests on the defective nature of the product and the campaign of deception and denial over the last 50 years. And there is no evidence, they haven't even tried to do it, to raise it, that the government even knew about the issue of climate change and ordered any kind of production or activity regardless. Supreme Court in Boyle says that's the key question. This court in, I think it's pronounced Light, L-E-I-T-E, a failure to warn asbestos case, talked about that. And the Fifth Circuit in the winters, the Agent Orange case, talked about it. In each of those instances, the defendant claiming federal officer status presented detailed evidence that the government had full knowledge of the dangers of which the plaintiff complained that there hadn't been warning and directed either the nature and form of the warning or not to make any warning at all. And it was based on that evidentiary showing, which is completely absent in this case, that the government had either equal to or superior knowledge about the issue that the plaintiff was suing over and that therefore federal officer status and removal was appropriate. In the Cabalsi case... one of the points that the court identified as going to the acting under, but I didn't see it as being a prominent or the key issue. We're looking at all of the relations between the contractor and the government. And so here 50 years ago, I guess, if that's the horizon, there was much less information about the impacts of fossil fuel products. So why would it have to be the case that absent knowledge by the U.S. government about this issue, there couldn't be the sort of connection between the contractor, the agent, and the government? Because you have to show that causal connection, otherwise you can't invoke federal officer removal. But a causal connection between what and what? The causal connection between what they claimed they were ordered to do, which most favorably to them is produce oil under commercial relationships with the government, and the plaintiff's claims, which are failure to disclose defective product and this campaign of deception and denial. Those are the bases of the tort. They would have to show federal officer control over the kind of campaign that you allege in the complaint. At least knowledge of it and a direction to do it. Knowledge of the harm, is that what you're getting at? Yes, knowledge of the harm. There's no federal interest in lies and deceit. Forgive me, but I think you are then in a position of alleging, and you very clearly allege, that the defendants knew for a really long time, for five decades, of this danger and did not warn, and your argument is the government did not know about it? There's no evidence that the government did. And there's no evidence that the government knew of the campaign of deceit and denial, which is exactly like what we have in the lead paint, the Conagra case and the County of Santa Clara case from California. Campaign of deceit and denial, that gets a little farther ahead than where we are, of course, at this point. But as I read the complaint, the campaign is advertising. No, it was a sophisticated, multifaceted communication strategy that included advertising, but a lot of other things. It included attacks on science and scientists in various public fora. It consisted of things as diverse as... I take your point. That's all in there. And so you're corralling all of that. That's what you're calling a campaign as a shorthand. Right. And the complaint actually... And I think we went well beyond what notice pleading requires in the complaint in laying out specific examples that we have even before the opportunity to conduct discovery. Okay, so now that we've... And thank you for the reorienting. So that's your campaign. That's what we're using as a shorthand, as campaign. And your position is that the defendants knew that for 50 years. Your complaint's very clear about that, that it was a concerted effort, according to your complaint. And that the defendant didn't... I'm sorry, that the federal government did not. Correct. All right. And that there's no evidence that the government... They haven't even tried to draw the connection between the wrongful conduct of which we complain and any government direction and control. Go back then to the strongest support. Is it the Agent Oren case? What is your strongest support for the argument, going back to Judge Acuda's question, that the federal control has to be... There has to be this nexus to the... What we're calling the campaign in your complaint, please. Which case is your strongest support for that? The Light case. The Winters case out of the Fifth Circuit that the Supreme Court cited in the Watson case. And in contrast, the Cabalcy case, where this court said that there had been a failure in proof to support the allegations that the defendant was operating under direction and control with respect to the conduct that happened. Who knew that was pronounced Cabalcy? Okay. How did I... Okay. It may be Cabalce. Okay. Thank you. Thank you. C-A-B-A-L-C-E. Got it. Right. Thank you. So now let's... If we can, if I may, let's pivot to talking about the evidence that was proffered and the three kinds of relationships that they have. First of all, the Outer Continental Shelf leases are purely compliance with federal regulation documents. And this court's recent holding in Riggs disposes of that. If you look at the defendant's notice of removal, for example, in excerpts of record 168 to 69, as they summarize it, for decades defendants OCSLA leases have instructed that, quote, the lessee shall comply with all applicable regulations, orders, written instructions, and the terms and conditions set forth in this lease. Riggs makes very clear, as does Watson, that merely complying with federal regulations and requirements does not rise to the level of federal officer actions. And, in fact, if the court were to hold that the Outer Continental Shelf leases do give rise to federal officer status, what you would be doing is opening up to every lessee and operator on federal lands, timber, mining, grazing, et cetera, and make them federal officers as well, because they all have leases or arrangements with the government where they have to comply with the terms that the government imposes, as well as federal law. The NEXCOM contracts... Can you address the Elk Hill Agreement? Yes. Because it claimed that that is, opposing counsel argues that that was producing oil at the government's direction for the government. Right. So as this court held in the United States v. Standard Oil Company, 545 F. Second 624, which we cited and discussed in our briefs, the purpose of this unit plan contract was to allocate the common underground pool of oil and protect standards right to extract its own share for commercial purposes. And nothing about this changes down the road. Counsel referred to the Petroleum Reserves... in which Congress determined that the Navy no longer needed to maintain a petroleum reserve for a national emergency, and instead the act allowed the Elk Hills Reserve to produce and offer oil on the commercial market. But the key point about, or points about, the Elk Hills contract itself is that the contract doesn't authorize the Navy to extract any oil at all, much less to direct and control Standard Oil's extraction and control activities for government purposes. In fact, if you look at paragraph 8, which appears on ER 197, it says, quote, It is expressly recognized by Navy and Standard that this contract does not and cannot in and of itself authorize the production of any of Navy's share. Unquote. It goes on to say that that would require a separate act of Congress, and there's, of course, no evidence in the record that that ever happened. With respect to the 15,000 barrels per day, what section 4B says is that until Standard shall have received from its share of production from the shallow zone the quantity of oil it is permitted to receive, the reserve shall be developed and operated in such a manner and to such extent as will so far as practicable permit production from the shallow oil zone to be maintained at a rate sufficient to produce therefrom not less than 15,000 barrels per day. Now, the contract also says in section 5D that Standard shall be permitted to receive from production from the shallow oil zone 15,000 barrels of oil per day. So what the provision says is the reserve has to be operated in order to allow Standard to take out its commercial share. There's nothing about the Navy doesn't have authority to take any oil out on its own, and there's nothing that indicates that Standard in operating on the reserve ever did anything at the government's behest or control. Doesn't the lease require that the Navy can compel the lease to be worked until the Navy gets its share? Only that the parties, which include both the Navy and Standard have to maintain it with oil in the ground sufficient to meet Standards share under the lease allocation and the Navy's ability in the future at some point, if it ever gets... And, by the way, the Navy  anything under that, even if the Navy were to activate, get a subsequent act of Congress and then move ahead with production on its own account. There's nothing in the record to support, quite apart from the causal connection issue that we were discussing earlier, there's nothing to show that the Navy ever directed Standard to do anything that wasn't in its own commercial interest on the Elk Hill Reserve, and that cannot rise to the level of a government officer. His argument is that they exercise the control. I think his argument is the contract gives it to them. The purpose of the leasehold was to preserve oil in the ground in case it was ever needed for a national emergency. But there's no evidence that Standard ever did anything at the government's direction. I'm with you, I understand. Right. Thank you. So let me just very briefly mention the NEXCOM-CITGO contracts. These appear in the supplemental excerpts of record. What's notable about them is that the purpose of those agreements was to have CITGO produce on for the Navy... Let me get the language so I get it exactly right. The purpose of these contracts, and this is from page two of the supplemental excerpt of record, is the intention of the Navy to obtain a gasoline supply contract which provides customer-recognized name-brand gasoline products. And if you go through each of the contracts, they're the same. It requires that the quality of gasoline has to meet ASTM standards that are, by the way, the same as what This court in the Monsanto case, the PCB case, made clear that providing to the government an off-the-shelf product does not rise to the level of a government officer. And that was an unpublished opinion, but it's very persuasive. Your Honors, these are big and important cases. They are not attacks for mere production and sale of gasoline or oil or coal since the dawn of civilization. You cannot read the complaint fairly to do that. These raise well-established state law claims and are cabined both temporally, as in time, I'm not sure if I said that correctly, temporally and in terms of the wrongful conduct that's complained of. And with that, Your Honor, unless you have other questions, I'll stop. Thank you. Thank you. We have some time for rebuttal. Thank you, Your Honor. Let me start with counsel's suggestion that there's no evidence that the federal government knew about the climate change and the consequences of emissions. This court three weeks ago in the Giuliana case declared the record also conclusively establishes that the federal government has long understood the risks of fossil fuel use and increasing carbon dioxide emissions. As early as 1965, the Johnson administration, it goes on. The government knew in Giuliana documents. So this has been an important issue that government, the federal government has been grappling with back dating into at least 1965 but earlier. Secondly, with respect to the, back to the federal officer removal issues, the test is not what counsel said. It's whether their claims relate to actions taken under the direction of a federal officer. And I urge the court to go to the paragraphs, back to the paragraphs Mr. Sherry just cited, paragraph 60 through 62 of the petition for removal beginning at page 168. But if the OXLA leases didn't simply say follow regulations, even in what counsel just read, it required the standard follow orders, written instructions, terms and conditions. It required them to follow plans that were developed by federal authorities. It's all on page 169 and page 170. So opposing counsel relies on a slight case, LEIT, the asbestos containing materials case, where there was a state tort claim regarding failure to warn. And the court focused primarily on the fact that the failure to warn was at the direction of the Navy. And so from that, that raises the argument that the relationship between the contractor and the government supervision has to be fairly closely related to the nature of the tort claim at issue. Can you address that? I can, Your Honor. The government, oil and gas production under the direction and supervision of officers is the gut of the claim here. This claim is all about the oil and gas production. Okay, so he strongly, the opposing counsel strongly rejects that and says this is all about the campaign to disseminate false information or omissions about the dangers of use of fossil fuel. And I think that one just needs to read the complaint. The complaint, the theory of the complaint is, and this is giving them every benefit, every presumption, is that these companies, by extracting oil and gas, have created a product that when used properly can create greenhouse gas emissions and that is warming the Earth's atmosphere. Part of their claim they add, but it's not a misrepresentation claim in the true sense. They're not suing for damages for not getting what they paid for or anything like that. It's really an atmospheric that says that the supposed campaign, which I object to the way it's being characterized, but I've taken the complaint, is that that increased the sale and the oil and gas production and the demand for the activities that caused the global warming. And those activities are oil and gas production at Elk Hill under detailed contracts. This isn't some ordinary contract. If I could just briefly address this. The Navy was either going to condemn and take all the land, including Standard's piece of that reserve, or instead keep it and then have a sharing unit where Chevron and Standard did the work. And it's just wrong to say that there's nothing in the record about oil production. As I mentioned, in our petition for removal, we cite the 1976 statute, which then caused Standard and then Chevron to conduct the oil and gas exploration and extraction for the United States government under these specifics. That is the essence of acting under the direction of a federal officer, and those activities clearly relate to the claim that is before the court. That's the essence of the claim. But you're reading part of the claim out, and he's just spent some time, the opposing counsel, spent some time correcting my shorthand. And he's right. A very important part of the claim, as I understand it, is the claim that there were active efforts to undermine the science. If I can use that shorthand, what about that? Well, first of all, even, you know, one, that's part of what they're arguing is punitive damages. They have other theories. But they're claiming that the companies knew. There were big First Amendment questions there as well. But part of their claim, the government promotes oil and gas production. Oxlo, the whole purpose of it was to allow the government to get as much oil and gas out of the continental shelf as possible. So to tax it. To tax it? Yes. There are the taxes. But also to make revenue from the leases because it's the government's land. But I'm not sure how this goes to my point. You're missing me. It seems to me that the way you're describing the essence, getting back to Judge Akuta's question, is that this is about production. And it seems to me the complaint alleges more than that. It's this campaign, again, to use that shorthand. And I'm not sure that you're really speaking to this part of the campaign, of the alleged campaign, to undermine the science. Let me go there. The fact that they have claims that go beyond simply the oil and gas production doesn't mean that the claims do not relate to oil and gas production under the direction of the federal officers. That's all that's required under the federal officer removal statute. Okay. It doesn't have to include everything. That's just for purposes of jurisdiction. So we think this case belongs in federal court. Thank you. Okay. We thank both sides for their argument. The case of County of San Mateo versus Chevron Corporation et al. is submitted.
judges: Ikuta, Christen, Lee